IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:14-CR-00072-KDB-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| FORTINO MALDONADO-GUILLEN, | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant's "Motion for Compassionate Release Filed Under the First Step Act 2018 and 18 U.S.C. § 3582(c)(1)(A)." (Doc. No. 491). The Government opposes the motion. Having carefully reviewed the Defendant's motion, exhibits, and all other relevant portions of the record, the Court will deny the motion for the reasons explained below.

## I. BACKGROUND

Defendant pleaded guilty to conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 841(a)(1), and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). (Doc. Nos. 3, 188). Between February and July 2011, Defendant obtained cocaine from a source in Virginia, and Defendant's nephew, David Maldonado, redistributed the cocaine and used the proceeds to repay Defendant. (Doc. No. 309: Presentence Investigation Report, ¶ 8) (restating the factual basis). During that period, Defendant supplied David Maldonado with at least 100 kilograms of cocaine in a series of 10-kilogram transactions. *Id.* at ¶¶ 8-13. Later, between February 2012 and October 2013, Defendant regularly obtained two to three kilograms of cocaine from David Maldonado's trips to obtain quantities of cocaine from Texas, which Defendant then redistributed. *Id.* at ¶¶ 11, 15-22, 27-32. Between July and October

1

2014, Defendant regularly redistributed cocaine obtained from his co-conspirators. *Id.* at ¶¶ 40-43, 50-57. In total, the amount of mixture and substance containing a detectable amount of cocaine and cocaine proceeds equivalent that was known to or reasonably foreseeable by Defendant (including relevant conduct) throughout the course of the conspiracy was at least 450 kilograms of cocaine. *Id.* at ¶ 67.

On June 9, 2016, Defendant was sentenced to 235 months of imprisonment, which was the equivalent of a two-point downward variance from his guidelines range of 292-365 months due to his age and health concerns. (Doc. No. 405); *see also* (Doc. No. 309). Defendant has served approximately 66 months (32%) of his projected term of imprisonment, and his current projected release date is April 1, 2032. (Doc. No. 495, at 2). Defendant is 52-years old and claims he has been diagnosed with a "myriad of underlying conditions," including "gout, blood clots in lungs, chronic degenative [sic] joint disease in both elbows, polycythemia vera, left shoulder deformity, testicle swelling, enlarged prostate, arthropathy, low back pain, disorder of eye and adnexa." (Doc. No. 491, at 4).

On or about May 22, 2020, Defendant was diagnosed with COVID-19 and placed in isolation. (Doc. No. 496: Medical Records). When diagnosed, Defendant suffered from a mild fever and reported a cough, sore throat, and aches. *Id.* at 53. Other than the symptoms accompanying his initial diagnosis, Defendant's medical records indicate that he did not report any symptoms or respiratory concerns at any other time during the course of his treatment. *See id.* at 2-25, 29-47. On June 5, 2020, and again on June 8, 2020, Defendant tested negative for COVID-19. *Id.* at 5. Due to his two negative tests, he was cleared to be removed from isolation. *Id.*

FCI Butner Low, where Defendant is incarcerated, currently has nine active inmate COVID-19 cases and one active staff COVID-19 case.[1] *See* COVID-19, *Federal Bureau of Prisons*, https://www.bop.gov/coronavirus/ (last visited August 14, 2020).

On April 8, 2020, Defendant submitted a compassionate release request to the Bureau of Prisons (BOP) based on his concerns about the risk of contracting COVID-19. On April 15, 2020, the warden of his facility denied the request because Defendant did not meet the criteria for having a debilitating medical condition. (Doc. No. 491, at 12). On June 24, 2020, after being diagnosed with COVID-19, treated, and released from COVID-19 isolation, Defendant filed a motion with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on his health concerns and the number of positive cases at FCI Butner Low. BOP has not considered Defendant as a candidate for home confinement. (Doc. No. 495, at 3).

## II.  LEGAL STANDARD

Finality is an important attribute of criminal judgments and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Compassionate release under 18 U.S.C. § 3582(c) is an exception to this general rule that a term of imprisonment may not be modified once imposed.  The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.—**The Court may not modify a term of imprisonment once it has been imposed except that—
>
>   (1) in any case—

---

[1] At the time the Government filed its response on July 22, 2020, FCI Butner Low had 327 active inmate COVID-19 cases and 1 active staff COVID-19 case. (Doc. No. 495, at 3).

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction
>>
>> . . .
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). A defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g.*, *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. Jan. 8, 2020); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

The United States Sentencing Guidelines do not specifically contain a policy statement addressing motions for reductions in terms of imprisonment that are filed by an inmate. However, U.S.S.G. § 1B1.13 ("the Policy Statement") addresses motions for reductions in terms of imprisonment that are filed by the Director of the BOP. The Policy Statement largely mirrors the language of 18 U.S.C. § 3582(c)(1)(A), but includes a directive that the court determine "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

The Policy Statement also directs a court to consider a variety of circumstances in determining whether extraordinary and compelling reasons justify a sentence reduction. U.S.S.G. § 1B1.13(2) App. Note 1. Specifically, a court should consider whether any of the following circumstances exist: (1) "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness

4

with an end of life trajectory)" although a specific prognosis of life expectancy is not required; (2) the defendant is: "suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; (4) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children"; (5) "[t]he incapacitation of the defendant's spouse or registered partner"; or (6) "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" set forth in the prior factors. *Id.*

While courts agree that the Policy Statement and Application Notes set forth above apply to motions filed by the Director of the BOP, courts differ on whether the Policy Statement is binding on motions filed by the inmate. *See, e.g.*, *United States v. Lynn*, No. 89-0071-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019) (binding); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (not binding). "The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants." *Beck*, 425 F. Supp. 3d at 579. In light of this, the majority of courts do not find the Policy Statement binding. Even so, the courts that find that the Policy Statement does not constrain a court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction still look to the old policy statement as it provides helpful guidance.

5

## III. DISCUSSION

### A. *Exhaustion of Administrative Remedies*

A prisoner may bring a motion for compassionate release before the court only if he "has fully exhausted all administrative rights to appeal a failure" of the BOP to bring a motion on his behalf or if 30 days have passed since the warden received his request, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Courts are split over whether the exhaustion requirement is jurisdictional or is a "case processing" rule that can be waived. *Compare United States v. Brown*, No. CR 12-20066-37-KHV, 2020 WL 1935053, at *1 (D. Kan. Apr. 22, 2020) (jurisdictional) *with United States v. Alam*, 960 F.3d 831, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) (case processing rule). The majority view is that the exhaustion requirement is a case processing rule that can be waived. *See, e.g.*, *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *2-3 (S.D.N.Y. Apr. 13, 2020) (collecting cases).

If the rule is not jurisdictional, then it can be waived, forfeited, or abandoned, and is otherwise subject to exceptions. *See United States v. Zekerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *5 (S.D.N.Y. Apr. 14, 2020). Because the Government did not raise the issue of exhaustion, the Court deems that it has waived the defense. Accordingly, the Court will proceed to address the merits of Defendant's motion.

### B. *Extraordinary and Compelling Reasons*

The Court agrees with the Government that Defendant has failed to establish extraordinary and compelling reasons justifying compassionate release. While Defendant's medical conditions appear serious and may present a heightened risk for serious illness from COVID-19, Defendant has already tested positive for COVID-19 and was successfully monitored and treated at his

facility. The immediate threat serving as the basis for Defendant's requested release—the risk of Defendant contracting COVID-19 and becoming seriously ill—has passed. Recovery from a positive COVID-19 diagnosis, particularly where the inmate suffered only minor symptoms, is not enough to show that extraordinary and compelling circumstances warrant Defendant's release. *See, e.g.*, *United States v. Shahbazpour*, No. 4:18-cr-557-JD-2, 2020 WL 3791633, at *2 (N.D. Cal. July 7, 2020) (denying compassionate release for defendant with recent series of staph, MRSA, and upper respiratory infections who had fully recovered from COVID-19 because "the immediate threat to [defendant] has passed with no serious long-term complications for him"); *United States v. Pinkston*, No. 606-026-1, 2020 WL 3492035 (S.D. Ga. June 26, 2020) (stating, regarding a 70-year-old inmate who tested positive for COVID-19 in prison, that "[defendant's] health was not sufficiently compromised by COVID-19 to qualify as a serious medical condition"); *United States v. Gregory*, No. 11 CR 745, 2020 WL 3036001 (N.D. Ill. June 5, 2020) (denying compassionate release for defendant who already contracted COVID-19); *United States v. Zahn*, No. 4:18-cr-00150-JD-1, 2020 WL 3035795 (N.D. Cal. June 6, 2020) ("[T]he immediate threat to [defendant] has passed, fortunately with no serious complications of any kind. That is enough to find that he has not proffered an extraordinary and compelling reason for release under 18 U.S.C. § 3582(c)(1)(A)(i).").

Defendant argues that just because he already contracted the virus does not mean that he is immune from contracting it in the future. However, the mere fact that there is no guarantee that he will not become re-infected, does not mean that extraordinary and compelling circumstances justify a reduction in his prison sentence. This is especially so when Defendant already contracted the virus and had only minor complications. Other courts have held that the possibility of re-infection does not constitute extraordinary and compelling circumstances. *United States v. Curtiss*,

7

No. 6:18-CR-06064, 2020 WL 3146506, at *2-3 (W.D.N.Y. June 15, 2020) (denying defendant's motion for compassionate release where defendant tested positive and recovered, but argued he may contract the virus again and suffer worse consequences); *United States v. Kim*, No. 13-303 SOM, 2020 WL 3213312, at * 3 (D. Haw. June 15, 2020) ("This court is in no position to make a definitive determination about immunity, but the combination of Kim's lack of complications after testing positive and the possibility of some form of immunity cannot be ignored in any evaluation of whether there are extraordinary and compelling reasons warranting a reduction in his sentence.").

## IV. ORDER

For these reasons, Defendant's Motion for Compassionate Release Filed Under the First Step Act 2018 and 18 U.S.C. § 3582(c)(1)(A), (Doc. No. 491), is **DENIED.**

**SO ORDERED.**

Signed: August 15, 2020

Kenneth D. Bell
United States District Judge