# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CRIMINAL ACTION NO. 5:14-CR-00072-KDB-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> FORTINO MALDONADO-GUILLEN, <br><br> Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release (Doc. No. 491) and his Supplemental Brief in Support of His Motion for Compassionate Release (Doc. No. 505). The Government opposes the motion. (Doc. No. 509). Having carefully reviewed Defendant's motion, exhibits (including Defendant's supplemental exhibit), and all other relevant portions of the record, the Court will deny the motion for the reasons explained more fully below.

## I.   BACKGROUND

*A. Defendant's Plea & Sentence*

Defendant was one of thirteen defendants indicted in a multi-count drug distribution conspiracy. (Doc. No. 59). He pleaded guilty to one count of conspiracy with intent to distribute cocaine in violation of 21 U.S.C. §§ 841, 846, and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h). (Doc. No. 188). As detailed in Defendant's Presentence Report, Defendant obtained cocaine from a source of supply in Virginia that he then gave to his nephew, David Maldonado ("David"), to redistribute from February 2011 through July 2011. David would travel to Defendant's residence to receive the cocaine, then he would transport the cocaine and sell it. David then returned the proceeds to Defendant. This cycle resulted in more than 100 kilograms

1

of cocaine being redistributed and hundreds of thousands of dollars exchanged over the course of a few months. (Doc. No. 309: PSR, ¶¶ 9-11).

Later, between February 2012 and October 2013, Defendant regularly obtained two to three kilograms of cocaine from David, which Defendant then redistributed. *Id.* ¶¶ 11, 15-22, 27-32. Then again in July 2014 through October 2014, Defendant regularly redistributed cocaine obtained from other co-conspirators. *Id.* at ¶¶ 40-43, 50-57. In total, the amount of drugs reasonably foreseeable by Defendant throughout the course of the conspiracy was at least 450 kilograms of cocaine. *Id.* at ¶ 67.

On June 9, 2016, Defendant was sentenced to two concurrent terms of 235 months of imprisonment, which was the equivalent of a two-point downward variance from his guidelines range of 292-365 months due to his age (47) and health concerns (arthritis). (Doc. No. 405); *see also* (Doc. No. 309).

### B. Compassionate Release

In April 2020, Defendant petitioned the warden of the Federal Correctional Institution (FCI) Butner for compassionate release. The warden acknowledged that Defendant has "medical conditions," but denied his request for a sentence reduction because he did not "meet the criteria under Debilitated Medical Condition" as defined in the BOP's program statement (which aligns with the Sentencing Commission's policy statement at U.S.S.G. § 1B1.13). (Doc. No. 505-1, at 2).

Shortly after Defendant was denied compassionate release by the warden, he contracted COVID-19. (Doc. No. 505-3, at 199-200). Defendant suffered from a mild fever and reported a cough, sore throat, and aches. (Doc. No. 496, at 53). Other than the symptoms accompanying his initial diagnosis, Defendant's medical records indicate that he did not report any symptoms or respiratory concerns at any other time during the course of his treatment. *See id.* at 2-25, 29-47.

On June 5, 2020, and again on June 8, 2020, Defendant tested negative for COVID-19. *Id.* at 5. Due to his two negative tests, he was cleared to be removed from isolation. *Id.*

Following the warden's denial, Defendant appealed the decision to BOP's regional counsel on June 10, 2020. (Doc. No. 505-2). When Defendant received no response, he filed a *pro se* motion for compassionate release in this Court on July 10, 2020. (Doc. No. 491). In his initial motion, Defendant described his medical conditions as follows: "gout, blood clots in lungs, chronic degenative [sic] joint disease in both elbows, polycythemia vera, left shoulder deformity, testicle swelling, enlarged prostate, arthropathy, low back pain, disorder of eye and adnexa." (Doc. No. 491, at 4).[1] He also stated that he recently had surgery to remove a gastrointestinal stromal tumor.

The Government filed a memorandum in opposition to Defendant's motion for compassionate release. (Doc. No. 495). In its opposition, the Government argued that Defendant did not show that extraordinary and compelling reasons warranted his release in large part because he had already contracted COVID-19 and recovered, suffering only minor symptoms.

---

[1] Defendant did not submit any medical records along with his initial compassionate release motion, nor did he request the Court's assistance in obtaining such medical records. These conditions were also absent in Defendant's Presentence Report, as Defendant was diagnosed with most of these conditions after he was sentenced.

Because it is a defendant's burden to show that extraordinary and compelling reasons warrant his release, numerous courts have denied compassionate release motions without prejudice when a defendant has failed to substantiate his claims of medical diagnoses with the appropriate medical records. *See, e.g.*, *United States v. Albertson*, No. 1:16-cr-00250-TWP-MJD, 2020 WL 1815853, at *2 (S.D. Ind. Apr. 8, 2020) ("The Court will not grant compassionate release on medical grounds without documentation . . . ."); *United States v. Clark*, No. 3:13-cr-163-FDW-1, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (denying motion for compassionate release, in part, because inmate failed to provide medical records to substantiate medical claims).

When the Government responded to Defendant's motion, it included only 69 pages of Defendant's medical records. Those medical records described Defendant's COVID-19 diagnosis and treatment, not his other medical conditions. (Doc. No. 505, at 6 n.3). Thus, the Court did not have many of the relevant medical records substantiating Defendant's claims of medical diagnoses when it first considered his motion.

The Court denied Defendant's compassionate release motion, concluding that Defendant had failed to show extraordinary and compelling circumstances warranted his release. The Court reasoned: "the immediate threat serving as the basis for Defendant's requested release—the risk of Defendant contracting COVID-19 and becoming seriously ill—has passed." (Doc. No. 498, at 7). The Court continued, "Recovery from a positive COVID-19 diagnosis, particularly where the inmate suffered only minor symptoms, is not enough to show that extraordinary and compelling circumstances warrant Defendant's release." *Id.* (citing numerous cases stating the same). The Court also rejected Defendant's speculative argument that extraordinary and compelling reasons warranted his release because there was no guarantee that he is immune from contracting the virus in the future. *Id.* (citing cases holding that a mere possibility of reinfection is inadequate to constitute extraordinary and compelling reasons for release).

### C. *Appeal & Joint Remand*

Defendant appealed the Court's order denying his motion for compassionate release. The Fourth Circuit Court of Appeals appointed the Federal Public Defender to represent him on appeal. Defendant filed an opening brief and a motion to expand the record on appeal to include the complete BOP medical records reflecting his medical conditions. The Fourth Circuit ordered the Government to respond to the motion. The parties then agreed to a joint remand to this Court for: (1) consideration of the Fourth Circuit's recent decision in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), and; (2) consideration of new evidence of Defendant's vaccination. The Government agreed that it would not object to Defendant presenting this Court with his complete medical records on remand.

Upon remand, this Court entered a text-only order requiring supplemental briefing by the parties. Defendant filed his supplemental brief, along with his complete BOP medical records, on

4

May 13, 2021. (Doc. No. 505). The Government filed a response in opposition on May 26, 2021. (Doc. No. 509). Defendant filed a reply to the Government's response on June 2, 2021. (Doc. No. 512). This matter is now ripe for review by this Court.

## II. LEGAL STANDARD

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, Congress has provided a few exceptions to this general rule. One such exception is a motion for compassionate release. Before the passage of the First Step Act, district courts were only permitted to reduce a term of imprisonment on motions for compassionate release made by the Director of the BOP. Now, a court may entertain a motion filed by a defendant. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.**—The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>    (i)    extraordinary and compelling reasons warrant such a reduction
>
>    . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).[2]

Despite the statute's reference to "applicable policy statements," there is currently no applicable policy statement governing compassionate release motions filed by defendants. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). "The only policy statement that could possibly be 'applicable'" is U.S.S.G. § 1B1.13, but that provision, "[b]y its plain terms, . . . does not apply to *defendant-filed* motions under § 3582(c)(1)(A)." *Id.* at 282 (emphasis added). Section 1B1.13 applies only to BOP-filed motions. As a result, district courts may consider any extraordinary and compelling reason for release that a defendant might raise. *Id.* Still, the Fourth Circuit has recognized that Section 1B1.13 provides helpful guidance to courts in determining what constitutes "extraordinary and compelling reasons." *Id.* at 282 n.7; *United States v. High*, 997 F.3d at 181, 186 (4th Cir. 2021). With respect to medical conditions, Section 1B1.13 states that extraordinary and compelling reasons include when a "defendant is suffering from a terminal illness" or is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of defendant to provide self-care within the environment or a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13 cmt. 1(A)(i), (ii).

Even if a court finds that a defendant has demonstrated extraordinary and compelling reasons, the Court must consider the § 3553(a) sentencing factors "to the extent that they are applicable" before granting release. 18 U.S.C. § 3582(c)(1)(A). Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment,"

---

[2] The parties do not dispute that Defendant has exhausted his administrative remedies as required under the statute. Therefore, the Court will not address exhaustion. *See United States v. Alam*, 960 F.3d 831 (6th Cir. 2020) (holding the administrative exhaustion requirement is non-jurisdictional).

"afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). Furthermore, a defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g., United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

### III. DISCUSSION

#### A. *Extraordinary and Compelling Reasons*

As stated above, because there is no applicable policy statement that applies to defendant-filed motions, the Court can consider any extraordinary and compelling reasons when considering a motion for compassionate release.[3] Nevertheless, while the Court may consider any extraordinary and compelling reasons justifying release, the burden is still on Defendant to show that such reasons exist.

Defendant contends that "his significant medical conditions—which exacerbate his high risk for severe complications from a Covid-19 reinfection [ ]—and the COVID outbreak at FCI Butner establish extraordinary and compelling reasons to grant his motion." (Doc. No. 505, at 15). The parties do not dispute that Defendant has serious medical conditions. Defendant suffers from two types of cancer—his medical records reflect that he recently had a gastrointestinal stromal tumor

---

[3] While the Court, admittedly, could have been clearer in its prior order, it did not adopt the Government's previous argument that U.S.S.G. § 1B1.13 was binding on defendant-filed motions. Rather, by stating that "the majority of courts do not find the Policy Statement binding," the Court intended to make it clear that it was not bound by the Policy Statement in its consideration of Defendant's motion. When the Court stated that it agreed with the Government that Defendant had failed to establish extraordinary and compelling reasons justifying release, it meant just that— Defendant had not shown that extraordinary and compelling reasons warranted his release. It was not an adoption of the Government's argument that U.S.S.G. § 1B1.13 was binding on the Court when considering defendant-filed compassionate release motions.

removed and also suffers from polycythemia vera, a type of blood cancer that causes bone marrow to create too many red blood cells. He also suffers from hypertension and gastrointestinal reflux disorder (GERD). (Doc. No. 505, at 11).

The Center for Disease Control and Prevention (CDC) lists cancer and heart conditions, like hypertension, as factors placing persons at an increased risk of serious illness from COVID-19. *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021). While not listed on the CDC website as an underlying medical condition associated with high risk for severe COVID-19, Defendant cites to a study concluding that GERD patients may face a higher risk of serious illness or death from COVID-19. (Doc. No. 505, at 14). Defendant also claims to suffer from "long-haul" COVID symptoms, stating that he now uses an inhaler multiple times a day for dry cough, chest congestion, and shortness of breath.

While these are serious medical concerns, Defendant is distinguishable from others who suffer from similar serious medical conditions for two reasons: (1) Defendant has contracted and recovered from COVID-19; and, more importantly, (2) Defendant has received the COVID vaccine.

Defendant argues that his prior COVID-19 infection "does not attenuate his risk should he become reinfected with the virus." (Doc. No. 505, at 15). He cites to a number of decisions in which courts granted compassionate release even when a defendant had already contracted and recovered from the disease because of the risk of serious illness or death if reinfected. As for the vaccine, Defendant notes that the CDC states that risk of a COVID infection in fully vaccinated people cannot be completely eliminated and that scientist "do not know how long the Covid-19 antibodies—whether from infection or by vaccine—will last, even in patients without risk factors."

(Doc. No. 505, at 20-21). This is especially dangerous, Defendant argues, when there are COVID variants that the vaccine may not be effective against. Further, Defendant notes that the CDC website acknowledges that individuals with weakened immune systems may not be fully protected even if they are fully vaccinated. *Id.* at 21 (citing to *Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/underlying-conditions.html (last updated June 16, 2021)). Defendant also cites to district courts that have granted compassionate release to fully vaccinated defendants due to the "uncertainty" surrounding the "degree and duration of protection vaccines provide." *Id.* at 22-24. Ultimately, Defendant urges the Court to find that his "prior Covid infection and current vaccine *do not guarantee* a lack of risk" to Defendant's health or life and that his COVID "risk factors, including his presence at Butner, are extraordinary and compelling reasons to justify granting compassionate release." *Id.* at 24 (emphasis added).

As for Defendant's prior infection, Defendant contracted and recovered from the disease. As this Court stated in its last order:

> The immediate threat serving as the basis for Defendant's requested release—the risk of Defendant contracting COVID-19 and becoming seriously ill—has passed. Recovery from a positive COVID-19 diagnosis, particularly where the inmate suffered only minor symptoms, is not enough to show that extraordinary and compelling circumstances warrant Defendant's release. *See, e.g.*, *United States v. Shahbazpour*, No. 4:18-cr-557-JD-2, 2020 WL 3791633, at *2 (N.D. Cal. July 7, 2020) (denying compassionate release for defendant with recent series of staph, MRSA, and upper respiratory infections who had fully recovered from COVID-19 because "the immediate threat to [defendant] has passed with no serious long-term complications for him"); *United States v. Pinkston*, No. 606-026-1, 2020 WL 3492035 (S.D. Ga. June 26, 2020) (stating, regarding a 70-year-old inmate who tested positive for COVID-19 in prison, that "[defendant's] health was not sufficiently compromised by COVID-19 to qualify as a serious medical condition"); *United States v. Gregory*, No. 11 CR 745, 2020 WL 3036001 (N.D. Ill. June 5, 2020) (denying compassionate release for defendant who already contracted COVID-19); *United States v. Zahn*, No. 4:18-cr-00150-JD-1, 2020 WL 3035795 (N.D. Cal. June 6, 2020) ("[T]he immediate threat to [defendant] has passed, fortunately with no serious complications of any kind. That is enough to

> find that he has not proffered an extraordinary and compelling reason for release under 18 U.S.C. § 3582(c)(1)(A)(i).").

(Doc. No. 498, at 7). The Government cites to a number of more recent cases denying compassionate release motions on similar grounds that this Court relied on in its earlier order. (Doc. No. 509, at 17-18).

Even more important, Defendant has received both doses of the vaccine since the Court's previous order. Defendant received the first dose of the Pfizer vaccine on December 19, 2020, followed by the second dose on January 6, 2021. The CDC reports that vaccinations protect individuals from getting sick with COVID-19, *Myths and Facts about COVID-19 Vaccines*, CDC (Mar. 11, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/facts.html, and "may also help keep you from getting seriously ill even if you do get COVID-19," *Benefits of Getting a COVID-19 Vaccine*, CDC (Jan. 5, 2021) https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html. The CDC also notes that vaccines currently available in the United States have been shown to be "highly effective" at preventing COVID-19. *Id.*

Just as Defendant cites to studies and cases supporting his proposition that vaccinated defendants are still at risk of contracting the virus (or a variant of the virus), the Government cites to a Food and Drug Administration Memorandum on the Pfizer vaccine that indicates the vaccine was 95% effective in preventing COVID-19 infection, even amongst those with underlying conditions. FDA Decision Memorandum, Pfizer—Dec. 11, 2020, at 23 (available at https://www.fda.gov/media/144416/download. The Government cites to a number of other studies confirming the efficacy of the vaccine in all people. (Doc. No. 509, at 12).

Further, Defendant claims that the "unusually harsh conditions of confinement" at Butner contribute to his extraordinary and compelling reasons justifying release. (Doc. No. 505, at 24). In response, the Government points to the BOP's extensive and professional efforts it has taken to

10

curtail the virus. As of June 24, 2021, the BOP reports that there are no inmate or staff COVID cases at any of the Butner facilities. While the Court cannot predict the future and recognizes that these numbers can change, the fact that there are currently no confirmed COVID cases at Butner weighs against Defendant's argument. In fact, the confirmed COVID cases across all of the BOP facilities is down significantly, with Bennettsville FCI having the highest number of positive inmates with only 11 cases. The Court certainly hopes that these drastically lower numbers indicate that the larger COVID outbreaks described by Defendant are behind us.

It is Defendant's burden to show that extraordinary and compelling circumstances justify his release. However, speculative concerns that Defendant "may" be reinfected with the virus, particularly where he has already been vaccinated, are not enough to satisfy Defendant's burden. (*See* Doc. No. 509, at 14-15) (citing a number of cases finding that speculative concerns about becoming infected with the virus after receiving the vaccine are too speculative, even when the defendant suffers from serious underlying health conditions).

Because of the broad discretion district courts have in granting compassionate release and the highly individualized inquiry required for these types of motions, it comes as no surprise that there are numerous cases that support both Defendant's and the Government's positions. (*See* Doc. Nos. 505, at 16-17, 22-24; 509, at 13-14; 17-18). Even Defendant himself recognizes that "[t]here is no consensus against compassionate release for vaccinated inmates and reasonable jurists have come to different conclusions on whether to grant compassionate release in these circumstances." (Doc. No. 505, at 6). The fact of the matter is, there remains many unknowns surrounding the virus. "Unknowns," however, are not enough to constitute extraordinary and compelling reasons for compassionate release.

As of now, the prevailing scientific view is that the vaccines are effective and substantially mitigate the risk of severe COVID infection. As one district court has noted, "It is, of course, possible that future research will demonstrate that current, or future, COVID-19 variants mitigate the effectiveness of the [ ] vaccine to such an extent that the vaccine no longer provides individuals with effective protection. However, [defendant] has not demonstrated that such is the case today and, it bears emphasizing, the burden falls upon [defendant] to demonstrate that compassionate release is warranted." *United States v. Singh*, 2021 WL 928740, at *3-4 (M.D. Pa. Mar. 11, 2021).

### B. Section 3553(a) Factors

Even if Defendant were able to show extraordinary and compelling reasons, the applicable § 3553(a) factors do not support release. The applicable § 3553(a) factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," and "protect the public." 18 U.S.C. § 3553(a).

While Defendant's criminal history is low, Defendant participated in a multi-year conspiracy involving the distribution of an extraordinary 450 kilograms of cocaine. At sentencing, the Court stated that if it was not for his poor health, Defendant's actions as a leader, maintaining a premise in the drug trafficking conspiracy, and the actions constituting his money laundering support a within the guideline sentence. (Doc. No. 427, at 16-17). When Defendant appealed to the Fourth Circuit, his sentence was upheld thereby affirming that Defendant's sentence of 235 months was a reasonable sentence for Defendant's conduct.

Moreover, when considering whether the need for the sentence provides just punishment and will afford adequate deterrence, the Court may consider how much of a defendant's sentence he has served thus far. Here, Defendant has served only 79 months of his 235 months sentence, which

12

amounts to only a third of his given sentence. Releasing Defendant at this time would fail to provide just punishment and afford adequate deterrence for Defendant's conduct in a large drug conspiracy.[4] (See Doc. No. 509, at 19) (citing to a number of cases holding the same).

Finally, while Defendant's post-sentencing rehabilitation (including his familial support, BOP plan/program review, and lack of any disciplinary infractions), are laudable, they do not outweigh the § 3553(a) factors discussed above. Thus, after consideration of the § 3553(a) factors, the Court finds compassionate release is not warranted.

## IV.   ORDER

For these reasons, Defendant's Motion for Compassionate Release, (Doc. No. 491), is **DENIED**.

**SO ORDERED.**

Signed: June 24, 2021

Kenneth D. Bell
United States District Judge

---

[4] The Court also notes the importance of just punishment and adequate deterrence in this case, where Defendant refused to assist the Government and sought to withdraw his plea agreement by denying involvement in a significant part of the drug trafficking conspiracy. As the Court stated at sentencing, Defendant's claim "does not carry credibility with it in light of the evidence abundantly cataloged in the factual basis statement." (Doc. No. 427, at 15).